JOHN A. WOLFF, Respondent, *v.* UNITED DRUG COMPANY, INC., Appellant.

First Department, February 1, 1918.

**Malicious prosecution — reversible error — suggestions to jury and admission of evidence as to arrest of plaintiff on another charge for which defendant was not responsible — right of counsel to draw inferences from evidence.**

Where, in an action for malicious prosecution based upon an arrest of the plaintiff for larceny, it appeared that at the time of the arrest he was already in custody upon a charge of having cocaine in his possession, upon which he was convicted, the larceny charge having been dropped, and there was no evidence that the defendant had anything to do with the investigation of the narcotic charge or with the arrest of the plaintiff thereon, it was reversible error for the plaintiff's counsel from the beginning of the case to the end to suggest to the jury that the defendant was responsible for the narcotic charge and to introduce evidence over objection of the circumstances attending the search of plaintiff's residence in aid of the narcotic charge, which evidence preceded the arrest of the plaintiff on the charge of larceny.

While counsel has a right to draw his own inferences from the evidence, a verdict cannot stand based even in part upon utterly improper and unwarranted inferences from irrelevant and improper evidence.

PAGE, J., and CLARKE, P. J., dissented, with opinion.

APPEAL by the defendant, United Drug Company, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of July, 1917, upon the verdict of a jury for $3,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes, and also from an order entered in said clerk's office on the 20th day of July, 1917, denying a similar motion.

*James A. O'Gorman* of counsel [*Cornelius J. Smyth* with him on the brief; *O'Gorman, Battle & Vandiver*, attorneys], for the appellant.

*Lowen E. Ginn* of counsel [*Joseph O. Skinner*, attorney], for the respondent.

SHEARN, J.:

When the arrest for larceny was made, upon which is based this action for malicious prosecution, the plaintiff was already in custody in the police station, having been arrested earlier in the same evening by officers of the police drug squad upon the charge of having cocaine in his possession without a pharmacist's record. The larceny charge was dropped without a hearing and the detention of the plaintiff pending bail was directly due to the narcotic charge, which proceeded to a judgment of conviction and suspended sentence. There is not a particle of evidence that the defendant had anything whatsoever to do with the investigation of the narcotic charge, or with the arrest of the plaintiff upon that charge. It clearly appeared that the narcotic charge first came to the attention of the defendant when the officers visited defendant's general offices, inquiring for the plaintiff as a result of the receipt by the police authorities of an anonymous letter signed " A heartbroken wife " complaining of the plaintiff, and charging him with supplying her husband with cocaine. Nevertheless, the plaintiff's counsel, from the beginning of the case to the

First Department, February, 1918.          [Vol. 181.

end, without any evidence to warrant him in so doing, persisted in suggesting to the jury that the defendant was back of and responsible for the narcotic charge and, over the repeated objection of the defendant, introduced in evidence all of the circumstances attending the search of plaintiff's residence on a search warrant in aid of the narcotic charge, and all of the distressing and humiliating circumstances attending the search and the arrest of the plaintiff on that charge. In his opening narrative, referring to the search on the narcotic charge, plaintiff's counsel stated that plaintiff asked the officers, " Who was back of this," and started to say, " They told him — " when defendant's counsel interposed an objection, which was overruled and exception taken. Thereupon plaintiff's counsel promised to connect the statement with the defendant (which he never did) and proceeded: " They suggested to him ' You know who you are working for.' " Proceeding with the examination of the plaintiff and referring to the visit of the officers making a search for the narcotics, plaintiff's counsel asked: " State now briefly, if you will, as slowly and in such a tone of voice so that the jury will hear you, what took place." This was objected to but the objection was overruled and exception taken. Plaintiff proceeded to describe the search and relate all that the officers said. Defendant's counsel again objected but was overruled. Plaintiff then, referring to a paper exhibited to him by one of the officers, said, " I had a chance to see this letter and I read it, in heavier type; it was a typewritten letter, the letter, ' Riker-Hegeman '— Q. One of the officers had handed you a paper to read; is that what you mean? A. Yes, sir." Objection was again made and overruled. Plaintiff then proceeded to describe the search as continued in the presence of his mother and daughter and related a conversation between himself and his daughter. Defendant's counsel continued to object but was overruled. Plaintiff's counsel proceeded: " Go right along and speak loud so that these men can hear it, what was said to you, after you asked ' Who is behind it? ' A. They said, ' Well, you know who you are working for? ' I said, ' Yes.' They said, ' For who? ' I said ' Riker-Hegeman Company.' " Objection was again taken and overruled with exception to the defendant. Plaintiff's counsel proceeded:

" Q. Go on from the time that you say these men were in the hall talking to themselves and they asked you if you had any friends, go right on from that, what took place?　A. Finally they says, ' You will have to come along, where is your coat; put on your coat, we will have to take you along.'　Then my little girl started to cry and said, ' Don't take my daddy away.' "　On defendant's objection and motion the court first struck this out, but upon the claim of plaintiff's counsel that he was entitled to show " the entire atmosphere of that search," the court reversed its ruling and allowed this evidence of " atmosphere " to remain in the record " on the subject of damages."　All of this evidence, it will be noted, had to do with the search and arrest on the narcotic charge, with which the defendant was unconnected, and it all preceded the arrest of the plaintiff on the charge of larceny, which was the subject of this action.　In summing the case up, plaintiff's counsel persisted in his attempt to inject " atmosphere " into the case and inflame the jury against the defendant, which he characterized as a " damnable corporation " by arguing that, although " it is not proven in this case," the inference was that the defendant had written the anonymous letter to the police signed " A heartbroken wife " in order to obtain a search of the plaintiff's premises and discover whether he had been stealing its property.　This was further calculated to saddle upon the defendant responsibility for the humiliation and mental anguish of the plaintiff, occasioned by the search of his premises and his arrest in the presence of his mother and daughter upon the narcotic charge.　Although plaintiff's counsel disclaimed asking for any damages on this account, he took every step suggested by ingenuity to fasten these irrelevant facts in the minds of the jury.　While counsel has a right to draw his own inferences from the evidence, a verdict cannot stand based even in part upon utterly improper and unwarranted inferences from irrelevant and improper evidence.　All of the evidence above quoted was improperly received and, together with the opening statement and the closing argument of plaintiff's counsel, plainly presents a case of seeking to induce a verdict by resort to the atmosphere surrounding another case rather than by reliance upon evidence relevant to the case on trial.　This may well have affected not only the award

of damages but the jury's finding upon the issues of malice and want of probable cause.

In my opinion, the judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

LAUGHLIN and SCOTT, JJ., concurred; CLARKE, P. J., and PAGE, J., dissented.

PAGE, J. (dissenting):

The action was for malicious prosecution. The plaintiff was in the employ of the defendant, then known as the Riker-Hegeman Company. Two or three weeks prior to the institution of the prosecution a police officer called at the general office of the company and inquired if they had any one in their employ by the name of John A. Wolff, giving his address. He was referred to John E. Wilson, of whom the officer made the inquiry, and stated that the police department had received an anonymous letter signed " A heartbroken wife " charging that a man of that name had sold her husband cocaine and that he was employed in one of the Riker-Hegeman stores. Wilson informed the officer that they had such a man in their employ and told him where he was so employed, and also informed the officer that they had missed articles from several of the stores in which Wolff had been employed and the officer replied that they were going to watch Wolff and see if he was selling narcotics, and if they found any articles marked Riker-Hegeman when they searched his place that they would notify him, and Wilson thereupon gave the officer the telephone number of his residence. After watching Wolff the officers searched his apartment and found a phial containing cocaine and arrested Wolff taking him to the station house. Thereafter they communicated with Wilson that in the course of their search they had found a number of articles marked Riker-Hegeman, and Wilson then went with the officers to Wolff's apartment and identified these articles and went with the officers to the police station where Wolff was then detained on the charge of having narcotics in his possession. Wolff was brought out of his cell and Wilson made a charge against him of grand larceny of these articles. Wolff was arraigned on the charge of grand larceny and held for examination on a short affidavit of the police officer, stating

that he had arrested Wolff on the charge of grand larceny which he believed he had committed from the information received from John E. Wilson, and requested that Wolff be held until he could produce Wilson and other witnesses. Two days later Wolff was brought before the court for examination and no one appearing against him was discharged. Thereafter Wolff was held in bail for the Special Sessions and convicted of the charge of being a pharmacist and having narcotics in his possession without a license and sentence suspended.

Upon the trial the defendant offered no evidence and the case was sent to the jury with an excellent charge by the trial justice. The most serious question in this case is the liability of the defendant for the act of Wilson. It was shown that Wilson had no personal acquaintance with Wolff, hence had no purpose of his own to serve. He was shown to. have held a position in the general offices of the company and not alone were the facts in relation to his activities in this case proved, but also that he was the head of the employment department. He was clearly acting in the master's interest and not in his own. I think the plaintiff made a *prima facie* case. This portion of the case was submitted to the jury in a careful charge, the judge impressing them that they could not find a verdict for the plaintiff unless Wilson was acting within the scope of his employment. The evidence is sufficient to sustain the verdict. It is also clear that Wilson acted without probable cause. He made no investigation to ascertain whether these articles had been purchased, but assumed that as some articles had been missing from the stores in which Wolff was employed any articles found in his possession which had once been the property of the Riker-Hegeman Company must have been stolen. Charges thus recklessly made without investigation imply malice.

It is claimed, however, that the judgment should be reversed, because the plaintiff's attorney stated in his opening that the defendant was responsible for the charge against the plaintiff of having narcotics in his possession, and in his summation attempted to inject atmosphere in the case to inflame the jury, and also that it was error to allow the details of the search of the premises to be given. This search was not made, however, solely for the purpose of securing evidence in the narcotic

case, but, at Wilson's request, was also for the purpose of securing evidence which resulted in the grand larceny charge. What occurred during the search was a part of the *res gestæ* of this case as it was of the narcotic case. Plaintiff's counsel, did state in his opening that he would show that the defendant was responsible for the anonymous letter, which he failed to do although evidence was brought out that the police officers had by their answers to the plaintiff's questions, and exhibiting the defendant's letterhead, lead him to infer that the defendant was responsible for the charge. In his summation plaintiff's attorney, after detailing circumstances that were in the evidence, in regard to the writing of the letter, Wilson's action, and that such a course could have been adopted for the purpose of getting the narcotic squad to search the premises without liability to them, distinctly said: " I say, of course, it is not proven in this case that that is the fact, but there is the evidence, and that that evidence excited in me that deduction, my mind went to the end. I am led to believe that that may be the very thing that happened in this case." There was no objection taken to the summation at the trial, nor was any request to charge made bearing upon this phrase. In my opinion to reverse a judgment because we do not think that the inference that counsel drew from the evidence is justified, when he has expressly stated that they are his inferences and not proof, would be going beyond any reasonable requirement.

In my opinion the verdict was not excessive and no reversible error committed. The judgment should be affirmed.

CLARKE, P. J., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.